UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAIL R. MORAN, ACTING REGIONAL DIRECTOR OF REGION 13 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD<br><br>Petitioner<br><br>v.<br><br>LATINO EXPRESS, INC.<br><br>Respondent | Civil No.<br><br>Judge<br>Magistrate Judge |

**PETITION FOR PRELIMINARY INJUNCTION
UNDER SECTION 10(J) OF THE NATIONAL LABOR RELATIONS ACT**

TO: The Honorable Judges of the United States District Court
Court for the Northern District of Illinois

Gail R. Moran, Acting Regional Director for Region 13 of the National Labor Relations Board (hereinafter "the Board"), petitions this Court for and on behalf of the Board for injunctive relief pursuant to Section 10(j) of the National Labor Relations Act (hereinafter "the Act;" 29 U.S.C. § 160(j)), pending the final disposition of the Board's administrative complaint against Latino Express, Inc. (hereinafter "Respondent"). The complaint charges that Respondent has violated and continues to violate Sections 8(a)(1) and 8(a)(3) of the Act (29 U.S.C. §§ 158(a)(1) and (3)), which, among other things, prohibit employers from discharging or taking other adverse employment actions against employees for engaging in union activity. In support of this Petition, Petitioner respectfully submits the following:

1. Petitioner is the Acting Regional Director for Region 13 of the Board, an agency of the United States government, acting for and on behalf of the Board.

2. Jurisdiction of this proceeding is conferred upon this Court by Section 10(j) of the Act, 29 U.S.C. § 160(j).

3. At all material times, Respondent, an Illinois corporation, has maintained an office and place of business in Chicago, Illinois, where it is now and previously has been engaged in the business of bus transportation services for students as well as charter bus services to the general public within this judicial district.

4. On January 18, 2011, Carol Garcia (hereafter "Garcia") and Pedro Salgado (hereafter "Salgado"), filed charges with the Board in Cases 13-CA-46528 and 13-CA-46529, respectively. Charges 13-CA-46528 and 13-CA-46529 allege that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the Act by discharging Garcia and Salgado due to their Union and protected concerted activity. On March 9, 2011, Teamsters Local Union No. 777, affiliated with the International Brotherhood of Teamsters, (hereinafter "the Union"), filed a charge with the Board in Case 13-CA-46634. Charge 13-CA-46634 alleges that Respondent interfered with employees' union and/or protected concerted activity by, inter alia, instructing them not to discuss their terms and conditions of employment with their co-workers; stating that efforts toward unionization would be futile; creating the impression that their union activities were under surveillance; threatening to discharge employees for engaging in union or protected concerted activity; making promises of benefits to employees in response to a union organizing campaign and/or employees' protected concerted activity; granting a wage increase in response to a union organizing campaign and/or employees' protected concerted activities; soliciting grievances from employees in response to

the union organizing campaign and/or employees' protected concerted activities; and interrogating employees about their union activity and/or protected concerted activities. A copy of the original charges in Cases 13-CA-46528, 13-CA-46529 and 13-CA-46634 are attached as **Exhibits 1, 2 and 3**.

5. On March 28, 2011, following a field investigation by Region 13 of the charges in Cases 13-CA-46528, 13-CA-46529 and 13-CA-46634, in which all parties had an opportunity to submit evidence, the Petitioner, acting on behalf of the Acting General Counsel of the Board pursuant to authority delegated to the Petitioner, issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing pursuant to Section 10(b) of the Act (29 U.S.C. § 160(b)), alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the Act. The Consolidated Complaint scheduled a hearing before an Administrative Law Judge of the Board on the allegations contained therein for April 25, 2011. A copy of the Order Consolidating Cases, Consolidated Complaint and Notice of Hearing is attached as **Exhibit 4**.

6. On April 6, 2011, the Regional Director for Region 13 of the National Labor Relations Board, acting on behalf of the Acting General Counsel of the Board pursuant to authority delegated to the Petitioner, issued a First Amended Consolidated Complaint and Notice of Hearing pursuant to Section 10(b) of the Act (29 U.S.C. § 160(b)), alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the Act. The First Amended Consolidated Complaint scheduled a hearing before an Administrative Law Judge of the Board on the allegations contained therein for April 25, 2011. A copy of First Amended Consolidated Complaint and Notice of Hearing is attached as **Exhibit 5**.

7. Section 10(j) of the Act grants the Board the power, upon issuance of the Consolidated Complaint described above in paragraph 5, to petition any United States District Court, within any district wherein the unfair labor practices in question are alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. 29 U.S.C. § 160(j). Upon the filing of any such petition, Section 10(j) directs the Court to cause notice thereof to be served upon such person, and thereupon confers jurisdiction upon the Court to grant to the Board such temporary relief or restraining order where it deems such relief just and proper. *Id.*

8. In the underlying administrative proceeding in Cases 13-CA-46528, 13-CA-46529, and 13-CA-46634, Petitioner has a likelihood of success of establishing the following:

    (a) At all material times Respondent, a corporation, with an office and place of business in Chicago, Illinois, herein called Respondent's facility, has been engaged in the business of providing bus transportation services for students as well as charter bus services to the general public.

    (b) During the past calendar year, a representative period, Respondent, in conducting its business operations described above in paragraph 8(a) derived gross revenues in excess of $250,000 and purchased and received at its Chicago, Illinois, facility goods and materials valued in excess of $5,000 from points directly outside the State of Illinois.

    (c) At all material times Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

    (d) At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

(e) At all material times the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | |
|---|---|
| Henry Gardunio | Vice President |
| Michael A. Rosas Sr. | President |
| Joseph Gardunio Sr. | Owner |
| Victor Gabino | Maintenance Director |
| Sarah Martinez | Dispatcher/Manager |

(f) Around November or December 2010, Respondent, through Victor Gabino, at Respondent's facility, created the impression that employees' union and/or protected concerted activities were under surveillance.

(g) Around November or December, 2010, Respondent, through Michael Rosas Sr., at Respondent's facility, promised employees improved benefits in response to the Union's organizing campaign.

(h) On or about the dates set forth below, the exact dates being unknown to the Regional Director but well known to Respondent, Respondent, by Henry Gardunio, at the Respondent's facility:

(1) During the month of September 2010, interfered with employees' protected concerted activity by telling employees not to speak to each other about the accident reimbursement policy.

5

   (2) During the month of September 2010, frustrated employees' union activity by telling employees that union representation was never going to happen at Respondent's facility.

   (3) During the month of October or November 2010, created the impression that employees' union activities were under surveillance and threatened them with discharge.

   (4) During the month of January 2011, granted employees a wage increase in response to the Union's organizing campaign.

   (5) During the month of January 2011, promised employees improved benefits in response to the Union's organizing campaign.

   (6) During the month of January 2011, solicited grievances from employees in response to the Union's organizing campaign.

   (7) During the month of February 2011, interrogated employees about their union activity and threatened them with discharge.

   (8) During the month of February 2011, created the impression that employees' union activities were under surveillance and solicited grievances from employees in response to the Union's organizing campaign.

 (i) On or about December 10, 2010, Respondent discharged employee Carol Garcia.

 (j) On or about January 12, 2011, Respondent discharged employee Pedro Salgado.

(k) Respondent engaged in the conduct described above in paragraph 8(i) and (j) because the named employees of Respondent engaged in union activities.

(l) By the conduct described above in paragraph 8(f) through 8(h), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) and affecting commerce within the meaning of Section 2(6) and (7) of the Act, 29 U.S.C. §§ 152(6) and (7), 158(a)(1).

(m) By the conduct described above in paragraph 8(i) through 8(j), Respondent has been discriminating in regard to the hire, tenure, or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) and affecting commerce within the meaning of Section 2(6) and (7) of the Act, 29 U.S.C. §§ 152(6) and (7), 158(a)(1) and (3).

(n) The unfair labor practices of Respondent described above in paragraphs 8(f)-(j) have taken place within this judicial district.

9. Respondent's unfair labor practices, as described above in paragraph 8(f)-(j), have irreparably harmed and are continuing to irreparably harm employees of Respondent in the exercise of rights guaranteed them by Section 7 of the Act and the public interest in deterring Respondent's continued unfair labor practices. More particularly, Respondent's conduct has caused and will continue to cause the following harm:

(a) Respondent's wrongful discharge of Garcia and Salgado, two of the lead employee organizers for the Union, has caused employees to fear losing their jobs if they continue to support the Union. As explained above in paragraph 8(f) through 8(j), their discharges occurred during the time that Respondent repeatedly threatened, interrogated

and otherwise coerced employees during the Union's organizing campaign that employees would suffer adverse employment actions, including termination of their employment, if they engaged in union or protected concerted activity. Respondent's actions already have affected employee support for the Union. Employees have sought the return of their signed union authorization cards from the Union and are circulating an anti-union petition. Absent injunctive relief including Ms. Garcia's and Mr. Salgado's immediate, interim reinstatement, Respondent's remaining employees will conclude that neither the Board nor the Union can effectively protect their rights to select a union of their choosing without fear of termination and will be afraid to engage in future union or protected concerted activities. The passage of time inherent in the Board's administrative processing of its complaints, which often takes years, will dissipate the effectiveness of traditional Board remedies, including any permanent reinstatement remedy ultimately provided by the Board to Ms. Garcia and Mr. Salgado.

(b) Among the rights guaranteed to Respondent's employees by Section 7 of the Act, 29 U.S.C. § 157, is the right to freely choose the Union as their collective bargaining representative and to continue supporting the Union. Respondent's unlawful conduct has undermined these rights by severely chilling and eroding the employees' support for the Union. Although the employees may be willing to support the Union in private, e.g., in a secret-ballot election, interim relief is needed to ensure that they feel free to openly support the Union and take an active role in the bargaining process. Indeed, in early February 2011, after the unfair labor practices had occurred, five employees asked the Union for their signed union authorization cards back and 21 employees signed an anti-Union petition. Thus, absent interim relief, the Union will not

have the requisite support to effectively represent the unit employees. As time passes and the Union is unable to protect the employees or affect their working conditions, employee support for the Union will inevitably erode. Unless interim reinstatement is promptly obtained, Respondent's discharge of Ms. Garcia and Mr. Salgado, two of the leading employee organizers, will continue to send a clear and forceful message resonating with employees that Respondent will not tolerate protected concerted activity or union activity. The remaining employees will continue to fear that showing support for the Union, or engaging in other protected activity, will likely result in their abrupt termination or other serious adverse employment actions and that neither the Union nor the Board can effectively protect them. Thus, Respondent will have achieved its goal of eroding employee support for the Union through its unfair labor practices, and will be undeterred going forward from committing further unfair labor practices.

10. In balancing the equities in this matter, the immediate and substantial harm to employees, the public interest, and the purpose and policies of the Act of not granting this relief substantially outweigh the minimal burden on Respondent to take these actions.

(a) Absent injunctive relief including the immediate, interim reinstatement of Ms. Garcia and Mr. Salgado, a distinct danger exists that these individuals will be forced to accept alternate employment and may never wish to return to their jobs, thereby rewarding Respondent for unlawfully removing leading union activists from the bargaining unit. Following the passage of time, Ms. Garcia and Mr. Salgado will be increasingly less likely to accept reinstatement to their jobs with Respondent and will be less enthusiastic about resuming their support for the Union. Where the discrimination has taken place following an organizing campaign and an election won by a union,

interim reinstatement of the principal union supporters is critical to protecting the employees' Section 7 right to select a bargaining representative free from Respondent's threats and coercion. Ms. Garcia's and Mr. Salgado's immediate reinstatement will enable the Union to approach Respondent with the same employee support it had when the Union was conducting its organizing campaign and the election was conducted in April 2011 wherein the employees voted to make the Union their bargaining representative. If the Board ultimately certifies it as the employees' bargaining representative, the Union can engage in meaningful collective bargaining because it will retain the requisite employee support needed to do so. In the event the Board does not certify the Union, the interim reinstatement of these two individuals will protect the employees' free choice in a rerun election. Absent interim relief, Respondent will effectively accomplish its unlawful goals of permanently undermining the Union, ridding its workplace of Union supporters, and stripping employees of the benefits of good faith collective bargaining through its unlawful conduct. The inescapable effect would be to irreparably harm employees, the public interest, and the purposes and policies of the Act.

  (b)  In contrast, the harm of an interim order on Respondent is minimal. Should this Court grant injunctive relief, the imposition of cease and desist remedies requires nothing more than that Respondent obey the law. The reinstatement of Ms. Garcia and Mr. Salgado is on an interim basis, pending the outcome of the Board's administrative proceedings. During that period, Respondent will receive the benefit of Ms. Garcia's and Mr. Salgado's labor and their substantial years of experience performing the same job duties. Furthermore, Respondent will retain its managerial right to impose lawful discipline on employees. In the event Respondent prevails in the

underlying administrative proceeding, it will be free to lawfully terminate Ms. Garcia and/or Mr. Salgado at that time.

11. There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices, as described above in paragraphs 8(f)-(j). Absent interim relief, the delay in obtaining a remedy through traditional Board administrative proceedings will negatively affect the Board's ability to ensure industrial peace and protect employees' Section 7 rights to engage in protected concerted activities, join or assist labor organizations, and to bargain collectively through their own representatives. Interim relief, including the interim reinstatement of the two Union supporters, remains necessary here to preserve the effectiveness of a final Board order. Absent interim relief the employees will no longer support or have any interest in the Union by the time the final Board order issues thereby rendering it meaningless. Although the employees may be willing to support the Union in private, e.g., in a secret-ballot election, interim relief is needed to ensure that they feel free to openly support the Union and take an active role in the bargaining process. Indeed, in early February 2011, after the unfair labor practices had occurred, five employees asked the Union for their signed union authorization cards back and 21 employees signed an anti-Union petition. Thus, absent interim relief, the Union will not have the requisite support to effectively represent the unit employees. As time passes and the Union is unable to protect the employees or affect their working conditions, employee support for the Union will inevitably erode. Moreover, unless interim reinstatement is promptly obtained, Respondent's discharge of Ms. Garcia and Mr. Salgado, two of the leading employee organizers, will continue to send a clear and forceful message resonating with employees that Respondent will not tolerate protected concerted activity or union activity. The remaining employees will continue to fear that showing support for the Union, or engaging

11

in other protected activity, will likely result in their abrupt termination or other serious adverse employment actions and that neither the Union nor the Board can effectively protect them. Offering Ms. Garcia and Mr. Salgado reinstatement years from now, even if they accept, will not effectively remedy the current and continuing fear that employees have or restore the support the Union had prior to his unlawful discharges.

12. As previously noted, interim injunctive relief serves the public interest by insuring that Respondent's unfair labor practices do not succeed in permanently undermining its employees Section 7 rights or harming the remedial purpose of the Board, and by insuring that Respondent refrain from committing additional unfair labor practices in the future.

13. Injunctive relief is just and proper in this case because the Board has a likelihood of success on the merits; the Petitioner will be irreparably harmed if the Court does not issue injunctive relief; the threatened injury to Petitioner if no injunctive relief is granted outweighs any harm to Respondent in imposing injunctive relief; no adequate remedy at law exists; and the public interest is served by granting such relief. The Court's grant of temporary injunctive relief pursuant to Section 10(j) in this case preserves the remedial power of the Board, protects the Section 7 rights of Respondent's employees, and either safeguards the parties' potential collective-bargaining process or prevents the erosion of Union support in a rerun election due to Respondent's unfair labor practices.

14. Respondent has been notified of Petitioner's intent to file this Petition for Injunctive Relief under Section 10(j) of the Act, absent Respondent's agreement to provide the relief requested herein.

**WHEREFORE**, Petitioner respectfully requests that this Court issue an Interim Order, pending final Board adjudication of its Consolidated Complaint, directing Respondent to cease

and desist from interfering with, restraining or coercing its employees in the exercise of their Section 7 rights in any manner.

Petitioner also requests that the Court's Interim Order directs Respondent to take the following affirmative actions:

(a) Within 5 days of the District Court's order offer immediate, interim restatement to Carol Garcia and Pedro Salgado in writing, within five days, to their former positions of employment at their previous wages and other terms and conditions of employment, displacing, if necessary, any employees hired, transferred, or reassigned to replace them, or, if their former positions are no longer available, to substantially equivalent positions of employment;

(b) temporarily expunge any references to the discharge of Carol Garcia and Pedro Salgado from their personnel files and not rely on such discharge in any future discipline imposed prior to a final Board order;

(c) rescind on an interim basis the written discipline issued to Carol Garcia and Pedro Salgado on December 10, 2010, and January 12, 2011, respectively;

(d) post a copy of the District Court's order, together with a Spanish translation prepared at the Employer's expense, to be approved by the Regional Director of Region 13 of the Board, at Respondent's facility where notices to employees are customarily posted, maintain the posting during the Board's administrative proceedings free from all obstructions

and defacements, and grant agents of the Board reasonable access to Respondent's facility to monitor compliance with the posting requirement;

(e) convene all unit employees during working time at Respondent's Chicago facility and have a responsible management official of Respondent read the District Court's order in English and Spanish, or permit an agent of the National Labor Relations Board, in the presence of a responsible management official of Respondent, to read the District Court's order to employees; and

(f) within twenty days of the issuance of the District Court's decision and order, file a sworn affidavit with the District Court from a responsible official of Respondent setting forth, with specificity, the manner in which Respondent has complied with the terms of the Court's Order, including how the documents have been posted as required by the Court's order, and provide a copy of the sworn affidavit to the Petitioner.

Dated at Chicago, Illinois, this 8th day of April, 2011.

Gail R. Moran, Acting Regional Director
National Labor Relations Board
Region 13
209 South LaSalle Street, Suite 900
Chicago, Illinois 60604

## CERTIFICATE OF SERVICE

    The undersigned hereby certify that true and correct copies of this Petition for Preliminary Injunction Under Section 10(j) of the National Labor Relations Act, have, this 8th day of April, 2011, been served in the manner indicated upon the following parties of record:

Certified Mail

Michael Rosas, President
Latino Express, Inc.
3230 West 38th Street
Chicago, IL 60632

Carol Garcia
5414 S. Harding Avenue
Chicago, IL 60632

Pedro Salgado
2348 S. Blue Island
Chicago, IL 60608

Gregory Glimco
Secretary-Treasurer
Teamsters Local Union No. 777
7827 Ogden Ave.
Lyons, IL 60534


Certified mail and electronically (zane@zanesmith.com)

Zane D. Smith, Esq.
Zane D. Smith & Associates, Ltd
415 N. LaSalle, Suite 501
Chicago, IL 60654

                                                             /s/ Jeanette Schrand
                                                   Jeanette Schrand
                                                   Counsel for Petitioner
                                                   National Labor Relations Board, Region 13
                                                   209 South LaSalle Street, Suite 900
                                                   Chicago, Illinois 60604
                                                   (312) 353-7614
                                                   Jeanette.schrand@nlrb.gov

I, Gail R. Moran, being duly sworn, depose and say that I am the Acting Regional Director of Region 13 of the National Labor Relations Board; that I have read the foregoing Petition and exhibits and know the contents thereof; that the statements therein made as upon personal knowledge are true and those made as upon information and belief, I believe to be true.

DATED at Chicago, Illinois this 8th day of April, 2011.

                                                    */s/ Gail R. Moran*

Gail R. Moran, Acting Regional Director
National Labor Relations Board
Region 13
209 South LaSalle Street, Suite 900
Chicago, Illinois 60604

Subscribed and Sworn to Before me this
8th day of April, 2011.

*/s/ Keion Collier*
Notary Public
Rev. 3

OFFICIAL SEAL
KEION COLLIER
Notary Public - State of Illinois
My Commission Expires May 31, 2013